Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ESTRELLA RESIDENTIAL II, LLC<br><br>Apelado<br><br>v.<br><br>JOSÉ MANUEL PÉREZ CORTÉS Y OTROS<br><br>Apelantes | KLAN202300583 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso número: FA2018CV00263<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca (Vía Ordinaria) |

Panel integrado por su presidenta, la juez Domínguez Irizarry, la juez Rivera Marchand y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 9 de enero de 2024.

Comparece la parte apelante, José Manuel Pérez Cortés y Amarilys Arocho Maldonado, y nos solicitan que revoquemos la *Sentencia Sumaria* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, el 14 de marzo de 2023, notificada al día siguiente. Mediante dicho dictamen, el foro primario declaró Ha Lugar la demanda sobre cobro de dinero y ejecución de hipoteca incoada por el Banco Santander de Puerto Rico.

Por los fundamentos que exponemos a continuación, se modifica el dictamen apelado y, así modificado, se confirma.

**I**

El 4 de junio de 2018, el Banco Santander de Puerto Rico (Santander) incoó una *Demanda* sobre cobro de dinero y ejecución de hipoteca en contra de José Manuel Pérez Cortés, Amarilys Arocho Maldonado y la sociedad legal de gananciales compuesta por ambos (apelantes).[1] Indicó que, el 7 de junio de 2002, los apelantes suscribieron un pagaré por la suma principal de $270,000.00, más intereses al 7.250%

---

[1] Apéndice 1 del recurso, págs. 1-4.

anual, así como los demás créditos accesorios por endoso, y, en aseguramiento de este, otorgaron una primera hipoteca voluntaria mediante la Escritura Núm. 113 sobre una propiedad sita en el municipio de Río Grande. Planteó ser el acreedor del referido instrumento negociable y tener derecho a exigir el cumplimiento del mismo mediante la acción de epígrafe. Arguyó que, desde el 1 de enero de 2018, los apelantes dejaron de pagar las mensualidades, a pesar de los avisos y las oportunidades concedidas, incumpliendo así con el contrato de préstamo hipotecario suscrito por las partes. Por tanto, sostuvo que la deuda ascendente a $197,881.00 de principal, más intereses al tipo de 7.250% anual desde el 1 de diciembre de 2017, estaba vencida. En vista de ello, solicitó el pago de lo adeudado, más los intereses sobre esta, así como la suma de dinero por primas de seguros FHA, recargos por demora, intereses devengados y la cantidad estipulada de $27,000.00 por concepto de costas, gastos y honorarios de abogado. De otro lado, propuso que, si la hipoteca sobre la propiedad en cuestión no se encontraba debidamente inscrita en el Registro de la Propiedad, el presente pleito se continuara como cobro de dinero de una acción personal.

Por su parte, el 25 de febrero de 2019, los apelantes presentaron su alegación responsiva.[2] En esencia, negaron las alegaciones en su contra. Sostuvieron que Santander no había acreditado la tenencia física del pagaré original con su respectivo endoso a su favor para acreditar su capacidad como acreedor hipotecario.

Luego de varias sustituciones de parte, el 28 de junio de 2021, Luna Residential II, LLC (Luna Residential) sometió una *Moción en Sustitución de la Parte Demandante y en Solicitud de Continuación de los Procedimientos*.[3] Indicó que, el 2 de junio de 2021, el préstamo hipotecario objeto de ejecución y cobro fue transferido a esta como agente de servicio de Estrella Residential II, LLC (Estrella Residential o apelado). Alegó que

---

[2] Apéndice 2 del recurso, págs. 7-10.
[3] Apéndice 7 del recurso, págs. 17-21. Véase, Apéndices 3, 4, 5 y 6 del recurso, págs. 11-16.

se celebró la mediación compulsoria correspondiente y las partes no llegaron a un acuerdo, por lo que solicitó la continuación de los procedimientos.

Atendida la moción, el 2 de julio de 2021, notificada el 6 del mismo mes y año, el Tribunal de Primera Instancia emitió una *Resolución* mediante la cual declaró Ha Lugar la sustitución de parte y ordenó la continuación de los procedimientos.[4]

Así las cosas, el 16 de mayo de 2022, Luna Residential instó una *Solicitud de Sentencia Sumaria*.[5] En síntesis, sostuvo que era acreedora de los apelantes y que procedía el pago de las siguientes cantidades:

| | |
|---|---|
| Principal 1ro. de enero del año 2018 | $203,406.64 |
| Intereses acumulados al 7.25% calculados hasta el 1ro de julio de 2021 | $51,896.70 |
| Cargos por demora hasta el 1ro de julio de 2021 | $3,683.60 |
| Cheques devueltos | $80.00 |
| Adelantos corporativos | $1,605.72 |
| Escrow | $6,617.90 |
| Una cantidad equivalente al diez (10%) del principal original por honorarios de abogado pactados. La propiedad garantiza una cantidad igual por intereses vencidos que se acumulen hasta dicho monto. La propiedad garantiza una cantidad igual por adelanto, si algunos, que tenga que incurrir el acreedor. | $27,000.00 |

Luna Residential alegó en su petitorio sumario que, conforme a los términos de la hipoteca constituida para garantizar el pago de la obligación evidenciada por el pagaré hipotecario, tenía derecho a declarar vencido el balance insoluto del mismo y proceder a su cobro por el incumplimiento con los términos de pago de dicha obligación. Planteó que el préstamo hipotecario solicitado y desembolsado por los apelantes no se había repagado desde el 1 de enero de 2018, por lo que procedía que se emitiera

---

[4] Apéndice 8 del recurso, pág. 22.
[5] Apéndice 9 del recurso, págs. 23-32. Junto a su petitorio, Luna Residential incluyó los siguientes documentos: (1) copia de la *Certificación Registral de Propiedad Inmueble*, con fecha del 27 de abril de 2022; (2) copia de la *Declaración Jurada* suscrita por Rafael Hernández Miranda el 26 de agosto de 2021; (3) copia de la Escritura de Hipoteca Núm. 113 suscrita el 7 de junio de 2002; (4) copia de la *Minuta de Asiento de Presentación* ante el Registro de la Propiedad, con fecha del 18 de junio de 2002; (5) copia del *Pagaré* endosado. Véase, Apéndice 9 del recurso, págs. 33-69.

una sentencia sumaria en cuanto a la ejecución de la hipoteca objeto del presente pleito.

En respuesta, el 7 de julio de 2022, los apelantes se opusieron.[6] En esencia, arguyeron que la acción de epígrafe debía ser desestimada por la falta de legitimación activa de Luna Residential. Según adujeron, en el presente caso existía una controversia genuina en torno a la tenencia del pagaré en cuestión. En particular, argumentaron lo siguiente: (1) que no había ningún endoso a favor de Estrella Residential en el pagaré, aun cuando se representó al tribunal que Luna Residential era un agente de servicio de esta; (2) que, en un momento dado, se había sustituido a Firstbank Puerto Rico como parte demandante, pero esta institución tampoco aparecía en los endosos del pagaré; (3) que no había documento alguno que acreditara la autoridad representativa de Luna Residential a favor de Estrella Residential; (4) que el documento de *allonge*, donde presuntamente se traspasó el pagaré a favor de Luna Residential no era autenticable, ya que era un documento ajeno al pagaré y no hacía referencia alguna al mismo. En virtud de ello, solicitaron que se denegara la moción de sentencia sumaria promovida por Luna Residential y se desestimara la demanda incoada.

El 20 de diciembre de 2022, Luna Residential presentó una *Notificación de Unión a Representación Legal y Réplica a "Oposición a Moción de Sentencia Sumaria"*.[7] En lo pertinente, aclaró que el pagaré fue eventualmente endosado a favor suyo, pero que, por error clerical, había indicado que comparecía como agente de servicio de Estrella Residential, cuando la realidad era que comparecía en su propio nombre como tenedora del pagaré. Sostuvo que el pagaré que evidenciaba esta acreencia así lo demostraba, pues presentaba el mencionado endoso. Planteó ser la tenedora de buena fe del referido pagaré y, por ello, solicitó que se emitiera

---

[6] Apéndice 10 del recurso, págs. 70-75.
[7] Apéndice 11 del recurso, págs. 76-78. Luna Residential acompañó su moción con los siguientes documentos: (1) copia del *Pagaré* endosado; (2) copia de la Escritura de Hipoteca Núm. 113 suscrita el 7 de junio de 2002; (3) copia de la *Certificación y Declaración Jurada* suscrita por Rafael Hernández Miranda el 12 de diciembre de 2022. Véase, Apéndice 11 del recurso, págs. 79-107.

una sentencia sumaria a su favor. Posteriormente, el 24 de febrero de 2023, Luna Residential reiteró su réplica.[8]

Evaluadas las posturas de las partes, el 14 de marzo de 2023, notificada al día siguiente,[9] el foro primario emitió la *Sentencia Sumaria* que nos ocupa.[10] Concluyó que el pagaré objeto del presente pleito fue debidamente endosado a favor de Luna Residential y que la hipoteca suscrita en aseguramiento de esta se encontraba inscrita en el Registro de la Propiedad. Determinó que Luna Residential se encontraba en posesión del pagaré original, el cual era un instrumento negociable bajo las disposiciones de la Ley de Transacciones Comerciales, Ley Núm. 208 de 17 de agosto de 1995, según enmendada, 19 LPRA sec. 401 *et seq.*, y pagadero a la orden de esta, por lo que, al ser su tenedora, ostentaba el derecho a exigir su cumplimiento. Expresó que los apelantes venían obligados a efectuar el pago del pagaré hipotecario en plazos mensuales consecutivos, según convenido en el contrato que surgía de la Escritura de Hipoteca Núm. 113, pero que estos no habían efectuado pago alguno desde el día 1 de enero de 2018. Señaló que, según los términos del mencionado contrato, Luna Residential, como tenedora del crédito hipotecario, podía declarar la totalidad de la deuda vencida si se dejaba de satisfacer los plazos dentro del término convenido como efectivamente sucedió en este caso.

En vista de lo anterior, el foro apelado declaró con lugar la demanda de epígrafe. En lo aquí atinente, condenó a los apelantes a pagar a Luna Residential las siguientes sumas: $197,881.00 por concepto de principal desde el 1 de enero de 2018, más intereses al tipo pactado de 7.25% anual desde el 1 de diciembre de 2017. Especificó que dichos intereses continuarían acumulándose hasta el pago total de la obligación, más

---

[8] Apéndice 13 del recurso, págs. 109-110.
[9] Cabe destacar que, el 31 de mayo de 2023, la Secretaría del Tribunal de Primera Instancia expidió la boleta de *Notificación de Sentencia por Edicto*, la cual fue publicada en el periódico El Nuevo Día el 2 de junio del mismo año. Véase, Entrada Núm. 109 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) y el Apéndice 23 del recurso, págs. 145-160.
[10] Apéndice 15 del recurso, págs. 112-121.

cualesquiera sumas de dinero por concepto de primas de seguro hipotecario y riesgo, contribuciones sobre la propiedad inmueble, recargos por demora, así como cualesquiera otras cantidades adicionales pactadas en la escritura de primera hipoteca, desde la fecha antes mencionada y hasta la fecha del total pago de las mismas, más la suma de $27,000.00 para gastos, costas y honorarios de abogado.

En desacuerdo, el 29 de marzo de 2023, los apelantes sometieron una *Moción de Reconsideración de Sentencia Sumaria*,[11] a la cual se opuso Luna Residential el 13 de abril del mismo año.[12] Atendida la solicitud, el 15 de mayo de 2023, el foro *a quo* la declaró No Ha Lugar.[13]

Por otro lado, el 2 de junio de 2023, Luna Residential presentó una *Solicitud de Sustitución de Parte por Cesión de Interés*.[14] En esencia, indicó que había cedido todo su interés como acreedora del préstamo en controversia a Estrella Residential, lo cual convirtió a este último en portador del *Pagaré* hipotecario en cuestión. Por ello, solicitó la sustitución de parte y la enmienda del epígrafe. Entendido lo anterior, el mismo día, notificada el 5 de junio de 2023, el foro apelado emitió una *Orden* mediante la cual autorizó la referida solicitud.[15]

Inconforme, el 5 de julio de 2023, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

> El TPI erró al dictar Sentencia Sumaria y tomar en consideración la Réplica a la Oposición de Sentencia Sumaria con evidencia nueva a casi 6 meses de haberse presentado la oposición.
>
> El TPI erró al dictar Sentencia Sumaria cuando existía una controversia genuina sobre la legitimación de la parte demandante.
>
> El TPI erró al dictar Sentencia Sumaria y condenar a los demandados al pago de sumas de dinero que no surgen del expediente judicial.

---

[11] Apéndice 16 del recurso, págs. 122-126.
[12] Apéndice 17 del recurso, págs. 127-132.
[13] Apéndice 18 del recurso, pág. 133.
[14] Apéndice 21 del recurso, págs. 138-143.
[15] Apéndice 22 del recurso, pág. 144.

En cumplimiento con nuestra *Resolución* del 7 de julio de 2023, la parte apelada compareció mediante *Alegato en Oposición a Apelación* el 3 de agosto de 2023.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Insurance Company*, 2023 TSPR 118, resuelto el 29 de septiembre de 2023; *Oriental Bank v. Caballero García*, 2023 TSPR 103, resuelto el 23 de agosto de 2023; *González Meléndez v. Municipio Autónomo de San Juan y otros*, 2023 TSPR 95, resuelto el 24 de julio de 2023; *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *Universal Ins. et als. v. ELA et al.*, 2023 TSPR 24, 211 DPR ___ (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba

incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra, pág. 8; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte

sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien,

el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. et als. v. ELA et al.*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Serrano Picón v. Multinational Life Insurance Company*, supra; *González Meléndez v. Municipio Autónomo de San Juan y otros*,

supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra.

**B**

Sabido es que la hipoteca es un derecho real que sujeta o vincula lo hipotecado a que eventualmente su titular pueda exigir la realización de su valor, así como tomar medidas para salvaguardarlo, en seguridad o garantía de la efectividad de alguna obligación dineraria. *Bco. Popular v. Registrador*, 181 DPR 663, 673 (2011). En ese sentido, la hipoteca se define por ser de carácter accesorio, indivisible, de constitución registral y grava bienes inmuebles, ajenos y enajenables que permanecen en posesión de su propietario o titular. *Íd.* Debido a su carácter accesorio, la hipoteca no es independiente de la vigencia de la obligación principal. *Dist. Unidos Gas v. Sucn. Declet Jiménez*, 196 DPR 96 (2016); *Westernbank v. Registradora*, 174 DPR 779 (2008). Por ello, está sujeta a la obligación principal en su existencia y extinción. *Íd.*

El Artículo 1775 del Código Civil de Puerto Rico de 1930,[16] 31 LPRA sec. 5043, así como el Artículo 54 de la Ley del Registro de la Propiedad

---

[16] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.* (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210-2015, según enmendada, 30 LPRA sec. 6081, establece que la hipoteca sujeta directa e inmediatamente los bienes y derechos sobre que se impone, cualquiera que sea su poseedor o titular, al cumplimiento de la obligación para cuya seguridad fue constituida. Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico ha reiterado que la hipoteca es:

> [U]n derecho real que, ya de momento, sujeta o vincula lo hipotecado, cualquiera que sea su titular, al poder de exigir eventualmente la realización de su valor así como la adopción de medidas dirigidas a salvaguardarlo, todo en seguridad o garantía de la efectividad de alguna obligación dineraria, y cuyo derecho es de carácter accesorio, indivisible, de constitución registral, y grava bienes, ajenos y enajenables, que permanecen en posesión de su propietario o titular, y el cual implica un poderoso instrumento del crédito territorial. *Crespo Rodríguez v. González González*, 208 DPR 557, 573 (2022), citando a R.M. Roca Sastre y otros, *Derecho Hipotecario*, 9na ed., Barcelona, Ed. Bosch, 2009, T. VIII, págs. 15-16. Véase, además, *DLJ Mortgage v. García Ramos*, 207 DPR 28, 53 (2021); *SLG Haedo-López v. SLG Roldán-Rodríguez*, 203 DPR 324, 341 (2019).

En cuanto a su constitución, el Artículo 1756 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5001, enumera los siguientes requisitos fundamentales para el otorgamiento de un contrato de hipoteca: (1) que se constituya para asegurar el cumplimiento de una obligación principal; (2) que la cosa hipotecada pertenezca en propiedad a quien la hipoteca; y (3) que las personas que constituyan la hipoteca tengan libre disposición de sus bienes o, de no tenerla, que tengan autorización legal para ello. *Crespo Rodríguez v. González González*, supra, pág. 573; *Dist. Unidos Gas v. Sucn. Declet Jiménez*, supra, pág. 110; *Westernbank v. Registradora*, supra, pág. 784.

De igual modo, el Artículo 1774 del mismo cuerpo reglamentario, 31 LPRA sec. 5042, requiere que, como condición para su validez, la hipoteca sea inscrita en el Registro de la Propiedad. *Crespo Rodríguez v. González González*, supra, pág. 574; *SLG Haedo-López v. SLG Roldán-Rodríguez*, 203 DPR 324, 341-342 (2019); *Dist. Unidos Gas v. Sucn. Declet Jiménez*, supra, págs. 110-111. Conforme a ello, nuestro Tribunal Supremo ha enfatizado la naturaleza constitutiva de la referida figura y ha expresado

que "la garantía de un crédito personal no se constituye en garantía real —hipoteca— hasta que es inscrita en el Registro". *Íd.*, citando a *SLG Haedo-López v. SLG Roldán-Rodríguez*, supra, pág. 342; *Rosario Pérez v. Registrador*, 115 DPR 491, 493 (1984). Es decir, es por vía de la inscripción que la garantía produce un efecto real y eficaz de manera *erga omnes*. *Íd.*

**C**

La Ley de Transacciones Comerciales, Ley Núm. 208 de 17 de agosto de 1995, según enmendada, 19 LPRA sec. 401 *et seq.* (Ley Núm. 208-1995), fue creada con el propósito principal de simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales, así como permitir la continua expansión de las prácticas comerciales por medio de las costumbres, los usos y los acuerdos entre las partes. *Crespo Rodríguez v. González González*, supra, pág. 571; *DLJ Mortgage v. SLG Santiago-Ortiz*, 202 DPR 950, 963 (2019); *COSSEC et al. v. González López et al.,* 179 DPR 793, 802 (2010). El referido estatuto define los *instrumentos negociables* como una promesa o una orden incondicional de pago de una cantidad específica de dinero. 19 LPRA sec. 504(a). Los instrumentos negociables son documentos que se utilizan en el comercio y en la banca, denominados también como títulos o valores, títulos de crédito, efectos de comercio y documentos comerciales. Entre los instrumentos más utilizados se encuentran los pagarés. *COSSEC et al. v. González López et al.,* supra, pág. 799. Dicho estatuto define un *pagaré* como una promesa, es decir, "un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". 19 LPRA secs. 503 y 504(e). Los pagarés se distinguen entre los que contienen una fecha específica de vencimiento o no, o si son vencederos o pagaderos a la presentación. 19 LPRA secs. 508 y 509.

Por otro lado, la Ley Núm. 208-1995, *supra*, dispone que un tenedor "[r]especto a un instrumento negociable, significa la persona en posesión del mismo si el instrumento es pagadero al portador o, en el caso de un instrumento pagadero a una persona identificada, si la persona identificada está en posesión del mismo". 19 LPRA sec. 451(20). Igualmente, establece

que la persona con derecho a exigir el cumplimiento de un instrumento negociable es el tenedor del mismo. 19 LPRA sec. 601. Se prueba ser tenedor de buena fe de un instrumento con la firma y la autenticidad de este. En una causa de acción para exigir el cumplimiento del instrumento, si se admite o se prueba la validez de las firmas, el demandante que lo produzca tiene derecho al pago si prueba ser el tenedor del pagaré. 19 LPRA sec. 608.

Sobre dicho particular, el citado estatuto define el término *endoso* como una firma, que no sea la de un signatario como firmante, librador o aceptante, que por sí sola o acompañada de otras palaras se añade en un instrumento con el propósito de: (1) negociar el instrumento; (2) restringir el pago del instrumento; o (3) incurrir en la responsabilidad del endosante respecto al instrumento, pero independientemente de la intención del signatario, una firma y las palabras que la acompañen es un endoso, a menos que las palabras que acompañan la firma u otras circunstancias no ambiguas indiquen que la firma fue puesta con un propósito distinto al de un endoso. En ese sentido, para determinar si una firma está añadida en un instrumento, un papel adherido a este se considera parte de él. 19 LPRA sec. 554.

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

Como primer señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia erró al dictar *Sentencia Sumaria* y considerar la *Réplica a "Oposición a Moción de Sentencia Sumaria"*, la cual contiene evidencia nueva a casi seis (6) meses de haberse presentado la oposición. En su segundo señalamiento de error, plantea que el foro primario incidió al declarar Ha Lugar la acción de epígrafe aun cuando existe controversia genuina sobre la legitimación de la parte apelada.

Por su parte, el apelado sostiene que la evidencia presentada acredita que Luna Residential es la tenedora por endoso especial del

pagaré en cuestión, conforme dispone la Sección 2-204 de la Ley Núm. 208-1995, *supra*, por lo que no existe controversia sobre su legitimación. Sobre ese particular, alega que los apelantes no presentaron en su oposición evidencia alguna para impugnar lo mencionado. De otro lado, arguye que la *Réplica a "Oposición a Moción de Sentencia Sumaria"* se sometió con el propósito de reiterar el asunto pendiente, pero no se presentó nada nuevo sobre la solicitud dispositiva.

Por estar relacionados entre sí, discutiremos los referidos errores conjuntamente.

Sabido es que, ante una solicitud de sentencia sumaria, esta Curia se encuentra en igual posición para efectuar un análisis *de novo* de los petitorios sumarios sometidos ante la consideración del foro primario. Tras evaluar cuidadosamente *de novo* la totalidad del expediente ante nos, colegimos que no existen controversias sobre hechos medulares que impidan la solución de la presente causa por la vía sumaria. En su consecuencia, nos corresponde determinar si el derecho se aplicó correctamente.

Según esbozáramos, el pagaré, como instrumento negociable, es un compromiso escrito de pagar el dinero suscrito por la persona que se obliga a realizar el pago correspondiente. En ese sentido, un tenedor es quien tenga la posesión del instrumento si este es pagadero al portador. Por tanto, la persona con derecho a exigir el cumplimiento de un instrumento negociable es el tenedor de este. Se prueba ser tenedor de buena fe de un instrumento con la firma y su autenticidad. Así, pues, para determinar si una firma o endoso está añadida en un instrumento, un papel adherido a este se considera parte de él.

Contrario a lo argumentado por los apelantes, Luna Residential presentó evidencia de un documento adherido al pagaré en controversia en el que aparece un endoso a su favor. De esta manera, probó ser tenedora de buena fe de dicho pagaré. Distinto a lo que sostiene la parte apelante, la Ley Núm. 208-1995, *supra*, define un endoso como una firma

con el propósito de negociar el instrumento. Además, establece que para el propósito de determinar si una firma (endoso) está añadida en un instrumento, un papel adherido al instrumento (*allonge*) se considera parte de este. Por tanto, el *allonge* presentado por Luna Residential como evidencia del endoso a su favor resulta suficiente para sostener su legitimación en el caso de autos. Ante el escenario anterior, y después de examinar cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable, concluimos que el Tribunal de Primera Instancia no erró en su determinación y, por consiguiente, los errores señalados no se cometieron.

Ahora bien, como tercer señalamiento de error, la parte apelante alega que el foro *a quo* erró al dictar *Sentencia Sumaria* y condenar a esta al pago de sumas de dinero que no surgen del expediente judicial. Especifica que, tanto de la solicitud de sentencia sumaria, como de la *Declaración Jurada* que la acompañó, surge que la deuda de principal al 1 de enero de 2018 asciende a $203,406.64, más intereses y recargos, mientras que el foro primario dictó sentencia por la suma principal de $197,881.00; cantidad que, según sostiene, no surge del expediente. De otro lado, la parte apelada afirma que, en efecto, la suma adeudada es $203,406.64, según expresada en la *Moción de Sentencia Sumaria* y evidenciada mediante *Declaración Jurada*, por lo que el recurso de apelación que nos ocupa únicamente procede a los fines de que se aumente la suma de principal adeudada que aparece en el dictamen apelado. Es decir, las partes están contestes de que el foro sentenciador incidió al desglosar erróneamente la suma adeudada. Luego de evaluar la totalidad del expediente, concurrimos con las partes en que el foro de instancia erró en cuanto a la cantidad de principal adeudada, toda vez que, de los documentos ante nos surge que es $203,406.64, contrario a lo esbozado en la *Sentencia Sumaria* apelada. En conclusión, el tercer error señalado se cometió.

Examinado con detenimiento el recurso ante nos, así como la prueba documental que obra en autos, a nuestro juicio, el foro primario solamente incidió en la cuantía de principal adeudada por los apelantes. En consecuencia, modificamos el dictamen apelado a los únicos efectos de aclarar que la cantidad de principal adeudada es $203,406.64. Así modificada y al evaluar concienzuda y ponderadamente *de novo* los eventos procesales al palio de la normativa jurídica antes esbozada, confirmamos la determinación emitida por el Tribunal de Primera Instancia.

**IV**

Por los fundamentos que anteceden, modificamos el dictamen apelado a los únicos efectos de aclarar que la cuantía de principal adeudada es $203,406.64. Así modificada, confirmamos la *Sentencia Sumaria* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones